UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 2:10-cr-40
HON. ROBERT HOLMES BELL

CHRISTOPHER WAYNE BOWSER,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant Christopher Wayne Bowser has filed a motion to suppress evidence obtained from his residence, as well as statements he made to law enforcement officers on September 22, 2010. A hearing was held on March 7, 2011. Testifying at the hearing were Drug Enforcement Agency (DEA) Special Agent Jeffrey Poikey, Michigan State Police Detective Trooper Christopher Croley, Lindsay Treado, and defendant Bowser. The testimony provided two entirely different versions of what occurred at defendant's residence on September 22, 2010.[1] Defendant claims that DEA Special Agent Poikey and Upper Peninsula Substance Enforcement Team (UPSET) Detective Trooper Croley entered his residence without a warrant and without consent. Defendant claims the officers unlawfully searched his residence and seized several pounds of marijuana. The officers also allegedly questioned defendant without first providing a Miranda warning. The

---

[1]The parties do not disagree regarding the applicable legal standard. If defendant's version of the facts is accepted, defendant's motion to suppress should be granted. If the Government's version of the facts is accepted, the motion should be denied.

testimony of the law enforcement officers paints the picture of a fully cooperative defendant who willingly assisted the officers without coercion.

On September 22, 2010, Special Agent Poikey and Detective Trooper Croley traveled to defendant's home as part of an ongoing investigation involving a large marijuana growing operation that was discovered in the vicinity of Cable Lake, Michigan. Defendant was previously observed picking up a state criminal defendant involved in a drug distribution operation after a court hearing. Defendant had cooperated and provided information to UPSET on one previous occasion in 2004.

Special Agent Poikey knocked on the door of defendant's residence on September 22, 2010. Detective Trooper Croley went to the back of the house. Special Agent Poikey indicated that he knocked on the door approximately three times during a two to three minute period while waiting for someone to answer. He did not know if anyone was home, but there was a vehicle in the driveway. Defendant was not home at the time, but his girlfriend, Lindsay Treado, stated that she was asleep in the residence. Ms. Treado testified that she believed that Special Agent Poikey knocked on the door for at least fifteen minutes, but she was unsure because she was sleeping. Ms. Treado worked a night shift as a lab technician at Northstar Health. The knocking awoke Ms. Treado and she went to the door. She testified that when she opened the door, the officers were wearing camouflage outfits and an unmarked sport utility vehicle was parked outside. Special Agent Poikey testified that he was not wearing camouflage and did not have a gun in view. Detective Trooper Croley testified that it was possible he was wearing camouflage and was likely wearing his sidearm in view. Ms. Treado stated that the officers asked if they could speak with her and began to enter the residence. Ms. Treado said, "sure." Ms. Treado stated that she had no clothes on and was wearing a blanket around her at that time. She indicated that she was not thinking clearly because

she had just been sleeping. Both Special Agent Poikey and Detective Trooper Croley indicated that Ms. Treado was not naked but clothed. Special Agent Poikey testified that he has never interviewed anyone who was naked with only a blanket covering them. He further indicated that he would not conduct an interview with someone naked with only a blanket as cover. Ms. Treado testified that she was told to sit. Both officers testified that they showed their identification to Ms. Treado. They also testified that they were aware that Ms. Treado lived at the residence. Ms. Treado testified that the officers told her they were law enforcement officers, but did not produce identification.

Soon after the officers entered the home, defendant Bowser arrived. Special Agent Poikey indicated that they observed defendant arrive in a black pick-up truck and that they were standing up in the home waiting for defendant to come inside. Defendant stated that when he arrived, he first saw that a vehicle was parked in his spot. He hurried to enter his home where he found the officers. He stated that one of the officers was seated in his La-Z-Boy chair. The officers told Bowser their identity. Defendant stated that Detective Trooper Croley grabbed his shirt collar and began walking defendant toward defendant's personal office while telling defendant they would speak in the office. Defendant claimed that he told the officers that he wanted to speak outside instead. They refused the request. The officers claimed that defendant invited them inside the office so they could speak in a more private setting. Both officers testified that defendant led the way to the room, followed by Detective Trooper Croley, who was followed by Special Agent Poikey. Defendant stated that Detective Trooper Croley led the way. Defendant stated that he followed Detective Trooper Croley and Special Agent Poikey followed defendant. Defendant stated that the door was closed and Detective Trooper Croley opened the door and then looked inside the room before they entered the room. Similarly, Ms. Treado stated that the door to the office was closed and was opened by the officers. Ms. Treado did testify that she was seated on the couch in the living

room and that she was afraid to get off the couch because she had never been in trouble in the past. She testified that the officers told her not to leave the couch and not to make any telephone calls. Special Agent Poikey testified that the office was down a hallway and the office door was not visible from the couch in the living room where Ms. Treado was sitting.

Both officers testified that the office door was open and they could smell marijuana as soon as they entered the room. The officers claim that they immediately observed a pipe and two bags of marijuana on top of the desk. The officers testified that as they entered the room, defendant turned toward them and asked if they could go to a different room. Both officers stated they informed defendant that they had to deal with the drugs on the desk and they could not now leave the room. Defendant claimed that the marijuana seized was located inside his desk and inside a cooler in his office. Defendant claimed that the officers searched his office as soon as they entered the office.

Detective Trooper Croley seized the marijuana found on the desk and obtained a bag from Ms. Treado to secure the marijuana. The officers told defendant that they wanted to question him because his vehicle was observed outside the county courthouse, driven by someone who was picking up a defendant who had posted bond in another drug case. Defendant claimed that he no longer owned the vehicle and had sold the vehicle one month before the county courthouse incident. Special Agent Poikey testified that the vehicle was registered to defendant at the time it was observed. The officers informed defendant that they wanted his cooperation regarding a much larger scale drug operation which was under investigation. Special Agent Poikey explained that he was not that concerned about the two ounces of marijuana found in defendant's office because he was investigating a multi-million dollar drug operation. Special Agent Poikey explained that defendant's marijuana activities were not a concern at that point and were not the focus of the interview or the

reason they decided to visit defendant. Defendant was never placed under arrest and was not given Miranda rights. According to the officers, defendant volunteered information regarding his drug activities and agreed to cooperate with law enforcement. The testimony of the officers established that the interview and discovery of the marijuana was with defendant's full cooperation. Both officers indicated that defendant was never in custody and no coercive tactics were utilized.

Defendant voluntarily informed the officers about his drug activities. At one point, defendant opened his desk drawer and showed the officers cash in the drawer. Special Agent Poikey removed and counted the cash, but did not seize the cash. In contrast, defendant stated that Special Agent Poikey opened and searched the desk drawers, as well as a cooler where additional marijuana was found. Special Agent Poikey testified that he opened the cooler under the desk after defendant informed the officers that the cooler contained more drugs. This occurred right before the officers left the premises. The officers testified that they left the premises when defendant asked them to leave because defendant was expecting company. Defendant and the officers agreed to continue the conversation and defendant agreed to cooperate. Defendant was not arrested on September 22, 2010. On December 7, 2010, an arrest warrant was issued for defendant for conspiracy to distribute and possess with intent to distribute marijuana.

Defendant claims that the officers' search of his home without a warrant was unreasonable, and that his statements were made involuntarily without a Miranda warning. The government claims that the entry of the home was consensual and the marijuana was discovered in plain view. Further, the officers claimed that defendant made voluntary statements to the officers and was never in custody.

> The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search. Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint."

*Murray v. United States*, 487 U.S. 533, 536-37(1988) (citations omitted).

The government maintains that they received consent to enter defendant's house and that the evidence obtained was found in plain view. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." An officer is prohibited without a warrant from entering and searching a person's home absent consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). The consent to search must be voluntary, without coercion or the product of duress, to be valid. *United States v. Guimond*, 116 F.3d 160, 170 (6th Cir. 1997). It is the burden of the government to show by a preponderance of the evidence, based upon the totality of all the circumstances, that consent was voluntary. *United States v. Mendenhall,* 446 U.S. 544 (1980). In *United States v. Crowder*, 62 F.3d 782 (6th Cir. 1995), the court stated:

> Because the unwarned statements in question involve a consent to search, we apply the test set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and its progeny. Whether a consent to search is voluntary is a question of fact, to be proved by the government, *id.* at 222, 93 S.Ct. at 2045, and determined from the "totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2048; *see also United States vs. Scott*, 578 F.2d 1186, 1189 (6th Cir.), *cert. denied* 439 U.S. 870, 99 S.Ct. 2012, 58 L.Ed. 2d 182 (1978). Those circumstances include "evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights," *Bustamonte*, 412 U.S. at 248, 93 S.Ct. at 2058, as well as evidence concerning "the youth of the accused," "the length of detention," "the repeated and prolonged nature of the questioning," and "the use of physical punishment such as the deprivation of food

> or sleep." *Id.* at 226, 93 S.Ct. at 2047. Further, the accused's knowledge of his right to refuse to consent is only one factor–not a prerequisite–in establishing voluntary consent. *Id.* at 249, 93 S.Ct. at 2059.

*Id.* at 786-87.

Defendant also claims that because he never received Miranda warnings, the statements that he made were involuntary and should be suppressed.

In *United States v. Salvo*, the Sixth Circuit explained:

> The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." Consistent with this right against self incrimination, the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), ruled that suspects cannot be subjected to a custodial interrogation until they have been advised of their rights. In order to encourage compliance with this rule, incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her Miranda rights. *Id*.

133 F.3d 943, 948 (6th Cir. 1998).

It is well established that law enforcement's obligation to administer Miranda warnings is triggered where there has been such a restriction on a person's freedom of movement as to render him "in custody." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In determining whether an individual is in custody, the Court must examine the totality of the circumstances surrounding the interrogation. Courts look to factors which include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated

contact with the police or voluntarily acquiesced to the request for an interview. *See Salvo*, 133 F.3d at 950.

In *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517 (1983), the suspect voluntarily accompanied police to the station for questioning and freely departed at the end of the interview, after being told he was not under arrest but that his statement would be evaluated by the district attorney concerning that possibility. Similarly, in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711 (1977), the defendant agreed to meet the investigating officer at the station house for an interview. The defendant was told that he was a burglary suspect but was not under arrest. He was told that his truthfulness would be evaluated by the district attorney or judge. He was taken into a closed office where he was questioned concerning the burglary. The defendant was falsely told that his fingerprints were found at the scene. After a long pause, the defendant admitted to the crime. The defendant was then given Miranda warnings, but was not arrested. He left the station after being informed that the case would be referred to the district attorney for a decision whether charges would be pursued.

In the opinion of the undersigned, the testimony of Special Agent Poikey and Detective Trooper Croley was credible. I further find that the testimony of defendant and Ms. Treado was not credible. Both officers testified consistently as to what occurred. Ms. Treado's testimony that she was sleeping while the officers knocked on her door for approximately fifteen minutes and that she answered the door naked wearing only a blanket is not believable. Her testimony that the officers failed to properly identify themselves and entered her home before she consented to their entry is not credible. Further, Ms. Treado's testimony that the office door was closed, while also testifying that she was seated on the couch the entire time the officers were in the

home, is not consistent because she could not have seen the office door from her location on the couch according to the undisputed testimony of Special Agent Poikey.

Similarly, defendant testified that the officers were sitting in his living room when he arrived. The officers testified that they observed defendant drive his vehicle to the house. Special Agent Poikey stated that he was standing and waiting for defendant to enter the house. Further, defendant's version of the events which includes Detective Trooper Croley grabbing defendant by the shirt collar and forcing him toward defendant's office is not credible. Defendant also testified that he followed Detective Trooper Croley into the office while defendant Poikey followed him. Both officers testified that they were never in the house prior to that date and they did not know that the house contained a private office. Both officers testified that defendant suggested they go to the office and that he lead the way to the office followed first by Detective Trooper Croley and then by Special Agent Poikey. Defendant was experienced in cooperating with law enforcement because he had worked with UPSET officers as an informant in 2004. The officers were seeking cooperation and information from defendant. They were not concerned directly with defendant's drug distribution activities, but were seeking information about the larger drug operation that has been discovered near Cable Lake, Michigan. The testimony establishes that defendant was cooperative and provided information voluntarily to the officers.

Viewing the totality of the circumstances, the conduct of the officers was not coercive and defendant was never in custody. In the opinion of the undersigned, defendant's rights were not violated. Therefore, it is recommended that defendant's Motion to Suppress and Dismiss (Docket #9) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

         /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   March 18, 2011